IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Superior TeleCom Inc., et al.,[1] | ) | Case No. 03-10607 (JWV) |
| | ) | Jointly Administered |
| Debtors. | ) | **[Re: Docket No. 107]** |

### ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE (1) AUTHORIZING THE DEBTORS TO (a) IMPLEMENT A KEY EMPLOYEE RETENTION PLAN, (b) ESTABLISH A CASH INCENTIVE BONUS POOL, (c) IMPLEMENT A SEVERANCE PLAN, (d) IMPLEMENT CHANGE IN CONTROL PROTECTIONS FOR CERTAIN EXECUTIVES AND (e) HONOR CERTAIN SUPPLEMENTAL EXECUTIVE RETIREMENT PLAN AND DEFERRED COMPENSATION PLAN OBLIGATIONS AND (2) GRANTING RELATED RELIEF

**UPON** the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), seeking entry of an order, pursuant to Sections 105 and 363 of Title 11, United States Code, 11 U.S.C. §§101 et seq. (the "Bankruptcy Code"), (i) authorizing the debtors to (a) implement a key employee retention plan, (b) establish a cash incentive bonus pool, (c) implement a severance plan, (d) implement change in control protections for certain executives and (e) honor certain supplemental executive retirement plan and deferred compensation plan obligations and (ii) granting related relief; and it appearing that no further notice of the relief requested in the Motion is required; and it appears that the parties

---

[1] The Debtors are the following entities: Superior TeleCom Inc.; Superior Telecommunications Inc.; Superior Telecommunications Realty Company; Essex International Inc.; Essex Group, Inc., a Michigan corporation; Superior Essex Realty Company; Active Industries, Inc.; Diamond Wire & Cable Co.; Essex Funding, Inc.; Essex Services, Inc.; Essex Canada Inc.; Essex Technology, Inc.; Essex Wire Corporation; Essex Group, Inc., a Delaware corporation; Essex Group Mexico Inc. and Essex Mexico Holdings, L.L.C.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

have resolved any objections to the Motion by an agreement to modify the employee plans and programs as set forth on the term sheet annexed hereto as Exhibit A and to adjourn the Motion as it relates to the implementation of a severance plan; and the documents governing the implementation of the relief granted herein (the "Plan Documents") will be filed with this Court as provided below; and it appearing that it is in the best interests of the Debtors' estates for the Debtors to implement the Plans and to honor the DCP obligations as set forth below; and sufficient cause appearing therefore; it is hereby

ORDERED that the Motion, as modified hereby, is granted; and it is further

ORDERED that the Debtors are authorized to implement the Retention Plan and establish the Discretionary Retention Bonus Pool as set forth in the Motion, subject to the modifications set forth on Exhibit A and the Plan Documents; and it is further

ORDERED that the Debtors are authorized to establish the CIBP, implement the CIC Protections and honor the DCP obligations as set forth in the Motion, subject to the modifications set forth on Exhibit A and the Plan Documents; and it is further

ORDERED that prior to filing the Plan Documents, the Debtors shall obtain the consent of Deutsche Bank, as agent of the Debtors' prepetition senior secured lenders (the "Bank Agent"), and the Official Committee of Unsecured Creditors (the "Committee") as to the form and substance of such Plan Documents or, in the event that the consent of the Bank Agent or the Committee is not obtained, the Debtors shall seek approval of this Court of their proposed form of Plan Documents on not less than five (5) business days' notice to the Bank Agent and the Committee; and it is further

ORDERED that any payments or benefits to which an employee is entitled under the Plans, and/or the DCP shall be deemed allowed administrative expenses of the Debtors pursuant to Section 503(b) of the Bankruptcy Code; and it is further

ORDERED that the receipt or retention of any payment or benefit on account of the Plans or the Debtors' honoring of the DCP obligations shall constitute a waiver of any and all other pre-petition claims the recipient may have against the Debtors or their estates other than those authorized to be paid by separate orders of this Court; and it is further

ORDERED that the Debtors may take all steps necessary or desirable to effectuate the terms of this Order, the Plans and the honoring of the DCP obligations all as modified; and it is further

ORDERED that, except as set forth above, the relief granted in this Order is not, and shall not be deemed, an admission as to the validity of any underlying obligations, a waiver of any rights the Debtors may have to dispute such obligations subsequently or an assumption or rejection of any agreement, contract or lease under Section 365 of the Bankruptcy Code and the Debtors reserve all their rights with respect thereto; and it is further

ORDERED that the Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or relating to the implementation of this Order; and it is further

ORDERED that a hearing to consider the Debtors request to implement a severance plan shall be adjourned to *9:00 A.m. April 23, 2003*.

Dated: *4/10*, 2003

_Jerry W. Venters_
Honorable Jerry W. Venters
United States Bankruptcy Judge

# EXHIBIT A

# Superior Telecom
# Key Employee Retention Plan – Summary

1. Retention and Incentive Plan
   a. This program covers 26 key employees and provides for periodic payments at specific dates.
   b. Retention payments will be made in three installments. The first retention payment will be equal to 25.0% of the total payment amount and will be disbursed on May 3, 2003. The second retention payment will be equal to 37.5% of the of the total payment amount and will be disbursed on the earlier of September 3, 2003 or the Effective Date. The final retention payment will be equal to 37.5% of the total payment amount. The final retention payment will be paid six months following the Effective Date.
   c. Tier I consists of 4 individuals with total payments including target incentives for those eligible ranging from 65%-140% of annual base salary. The maximum potential cost is $1.17 million, subject to additional 10% bonus opportunity on incentive component for certain Tier I employees as described below.
      i. The CFO and the Presidents of the Communication and Original Equipment Manufacturing ("OEM") Divisions retention payments include a target incentive that is measured by the level of liquidity at the Effective Date of a Chapter 11 Plan (using the average liquidity for the four (4) weeks preceding the Effective Date as adjusted to include payments for certain fees payable for periods preceding the Effective Date, exit facility costs and other Effective Date-related payments). For these individuals, 80% of the payment is for retention and 20% of the payment is based on the incentive structure. There is an opportunity to earn an additional 10% if liquidity targets are exceeded.
   d. Tier II consists of 22 individuals with total payments ranging from 35%-75% of annual base salary. The maximum potential cost is $1.62 million, subject to salary increases.
   e. There will be a Discretionary Pool of $250,000. The DIP Agent must approve any payments made from the discretionary pool above $20,000 or to a participant in Tier II or CIBP referred to below. Tier I employees are not eligible to receive payments from the discretionary pool.

2. Guaranteed Incentive Bonus Pool (the "CIBP")
   a. This program covers approximately 120 employees and provides for one payment on January 1, 2004.
   b. Payments under this program range from 10%-35% of annual base salary. The total cost of this program is $2.30 million, subject to salary increases. None of these employees are participants in the Retention or Incentive Plan.

82264-001\DOCS_DE:68435.1
04/09/03 2:32 PM

3. General Severance Program
   *Set forth below is a summary of the General Severance Program, as agreed by the Company and the Bank Group. Court consideration will be deferred until the Unsecured Creditors Committee has an opportunity to review the details of the General Severance Program.*
   a. This program covers approximately 1,019 individuals.
   b. Severance amounts are based on salary bands and are divided into five separate Tiers. The severance payments per individual range from 25%-150% of annual base salary.
   c. The severance liability will be capped at $5.50 million excluding Tiers I and II.
   d. Tiers I and II consist of approximately 29 employees. The maximum potential severance cost for Tiers I and II is $5.47 million, subject to salary increases, excluding change-in-control payments.
   e. The COO and General Counsel will be treated as Tier II employees for the purpose of allocating General Severance benefits.
   f. Any unearned pay-for-stay payments will be credited toward General Severance payments.

4. Change-in-Control Severance ("CIC")
   a. The program covers 7 individuals.
   b. CIC severance payments are based on the individuals' annual base salary plus standard annual bonus.
   c. Payments per individual range from 1.0x-2.2x annual base salary plus standard annual bonus.
   d. The incremental cost above the General Severance Program for these individuals is approximately $2.28 million, subject to salary increases.
   e. A CIC event must take place within six months following the Effective Date and the employee employment must thereafter have been terminated without cause or for "good reason" within twelve months of the CIC event.
   f. Any new employment agreements put in place following Effective Date would supercede this CIC Severance Program.
   g. CIC is mutually exclusive with respect to the General Severance Program (i.e, CIC participants would not also receive General Severance benefit).
   h. Any unearned pay-for-stay payments will be credited toward CIC Severance payments.

5. Deferred Compensation Plan (the "DCP")
   a. The program includes 7 active employees and 1 former employee now employed with an affiliate company in which Superior has an equity ownership interest of approximately 20%.
   b. Active employees will be entitled to the amounts actually deferred from their salary adjusted for any prior disbursements.
   c. The former employee will be entitled to $75,000.
   d. The adjusted amount for these 8 individuals is approximately $605,000.

e. All payments under the DCP will be paid in accordance with the Plan documents

6. Post-Termination Right to Receive and Retain Benefits Paid Hereunder
    a. If a Key Employee is terminated without "cause", such Key Employee is entitled to retain any prior retention payment plus the pro-rata share of the next installment payment upon termination.
    b. If a Key Employee is terminated with "cause" or voluntarily leaves the Company, such employee is not entitled to any additional retention payments.
    c. If a Key Employee is terminated due to death or disability, such Key Employee or his or her beneficiary shall be entitled to retain any prior retention payment plus the next installment payment.
    d. A CIBP Eligible Employee who is terminated without "cause" prior to the payment date shall be entitled to receive a pro-rata share of his or her CIBP Payment upon termination.
    e. A CIBP Eligible Employee who is terminated for "cause" or who voluntarily leaves the Company shall forfeit any right to a CIBP payment.
    f. If a CIBP Eligible Employee is terminated due to death or disability, such employee or his or her beneficiary shall be entitled to the full CIBP Payment.

82264-001\DOCS_DE:68435.1
04/09/03 2:32 PM